Argued and submitted June 18, reversed and remanded for new trial
August 15, 2001

STATE OF OREGON,
*Respondent,*

*v.*

TIMOTHY MARK DEBOLT,
*Appellant.*

77012; A108939

30 P3d 1207

Paula Johnson Lawrence argued the cause for appellant. With her on the brief was Lawrence & Houser, P.C.

Robert B. Rocklin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Judge, and Warren, Senior Judge.

BREWER, J.

**BREWER, J.**

In this appeal from his conviction for harassment, defendant contends that the trial court erred when it instructed the jury *sua sponte* that a witness's testimony was admitted into evidence only for the purpose of impeachment as a prior inconsistent statement and could not be considered as direct evidence.[1] We reverse and remand for a new trial.

Defendant, an employee at the federal prison in Sheridan, was charged with reckless driving, fourth-degree assault, and harassment arising out of an incident that occurred in the prison parking lot on March 24, 1999. The state presented evidence that defendant struck another prison employee, Robert Drake, with his moving vehicle while Drake was marching in formation with fellow members of the prison's Special Operations Response Team (SORT). The defense theory of the case was that defendant was wrongfully accused by Drake and other SORT members of crimes he did not commit in retaliation for his activities as a union leader at the prison. Defendant had been instrumental in the success of a grievance that had resulted in a costly ruling against prison management. Specifically, the defense theory was that Drake faked being struck and hit the side of defendant's vehicle with his hand as defendant drove by the SORT marching formation.

At trial, defendant called John Kinkade as a witness. Kinkade was one of the SORT members who witnessed the parking lot incident. Defendant's counsel asked Kinkade if, after the prosecution was commenced, he had told another prison employee, Jeffrey Auger, that "[w]e were just [fucking] with [defendant]. We didn't think that it would get this far." Kinkade responded that he did not recall making such a statement. Defendant later called Auger to rebut Kinkade's testimony. Auger testified without objection that Kinkade had made the questioned statement to him.

---

[1] Defendant makes two additional assignments of error that we reject without discussion.

Later, when the court and counsel discussed jury instructions, the court announced its intention to give the following instruction:

> "Evidence of a prior inconsistent statement is offered to impeach the credibility of a witness. Specifically, it is offered to prove that an inconsistent statement was made, not * * * the truthfulness of that prior statement."

Neither party had requested the instruction; instead, the court prepared it on its own initiative. The court advised counsel that the instruction was meant specifically to apply to Auger's testimony. In response, defense counsel informed the court that Auger's testimony had been offered as direct evidence. According to defense counsel, Kinkade's statement, as related by Auger, was a statement against interest under OEC 804(3)(c).[2] Counsel explained that Kinkade was "unavailable" within the meaning of the rule, because he professed not to remember whether he had made the statement. Despite counsel's argument, the court gave the instruction. The jury found defendant not guilty of the assault and reckless driving charges, but it convicted him of harassment.

On appeal, defendant renews his argument that, because the state did not object to it, Auger's testimony was received as substantive evidence, not as impeachment evidence. Defendant focuses on OEC 804(3)(c), and asserts that the statement was "against Kinkade's proprietary interest in that it subjected him to civil liability for malicious prosecution or abuse of process, union-related grievances, or work disciplinary sanctions up to and including termination." Defendant argues that it was critical for the jury to consider

---

[2] OEC 804 provides, in part:

"(3) The following are not excluded by [OEC 802] if the declarant is unavailable as a witness:

"* * * * *

"(c) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Auger's testimony as direct evidence in light of the defense theory that the criminal charges against defendant were fabricated by Drake and other SORT members in retaliation for defendant's union leadership. Defendant contends that the restriction imposed by the trial court *sua sponte* on the use of Auger's testimony prevented his counsel from arguing the statement to the jury as substantive evidence that the charges were fabricated.

The state responds that defendant offered no foundational evidence qualifying the statement under OEC 804(3)(c). First, the state observes that there was no evidence that Kinkade believed the statement to be against his interest at the time he made it. *See Hoffman v. Freeman Land and Timber, LLC.*, 156 Or App 105, 114, 964 P2d 1144 (1998), *rev'd on other grounds* 329 Or 554, 994 P2d 106 (1999) ("[The] plaintiff is required to provide 'some evidence, or at least an inference [that] could be drawn from that evidence, which indicates that the declarant realized that the statements were against his pecuniary interest at the time they were made.'") (citing *Reynoldson v. Jackson*, 275 Or 641, 645, 552 P2d 236 (1976)). The state also argues that the reasons defendant posits for the statement being against Kinkade's interest are speculative. Third, the state asserts that Kinkade's "off-hand comment made to a co-worker" does not demonstrate that a reasonable person would not have made the statement unless it was true. For each of those reasons, the state contends that the statement was not admissible as substantive evidence under OEC 804(3)(c). Finally, the state urges that any error was harmless, because the court's instruction did not specifically refer to Auger's testimony, and it only consisted of "four and one-half lines of transcript out of the nine pages devoted to jury instructions."

The principal difficulty with the state's foundation arguments is that none of them was made in support of an objection to Auger's testimony. As noted, Auger testified without objection that Kinkade made the questioned statement. In the absence of an objection, the jury was not limited as to how it could consider the evidence. *See State v. Goodwin*, 136 Or App 356, 361, 902 P2d 131 (1995), *rev den* 322 Or 490 (1996) ("Although defendant argues that * * *

impeachment evidence cannot be viewed as substantive evidence, she did not object to that evidence and, in the absence of an objection, the jury was not limited in how it could consider the evidence."). Whether the state could have successfully argued in the trial court that the evidence was not admissible as substantive evidence under OEC 804(3)(c) is beside the point, given that the state made no objection at all to the evidence. The trial court's instruction, which was specifically tailored to address Auger's testimony, improperly limited that testimony to the purpose of impeachment. Accordingly, the trial court erred in instructing the jury as it did.

■ Nor was the error harmless. Although the instruction did not specifically refer to Auger's testimony or Kinkade's statement, the trial court made clear to counsel that the instruction applied to that evidence. Therefore, defendant's counsel was precluded from making a particularly forceful point in support of the defense theory in closing argument, namely, that Auger's testimony constituted *substantive* evidence that *all* of the charges against defendant were fabricated. The jury found defendant not guilty on two of the three charges brought against him. We cannot say that the erroneous instruction did not influence the jury's guilty verdict on the harassment charge. *See State v. Powell*, 74 Or App 334, 337, 703 P2d 257 (1985) (holding that unless an erroneous instruction was unlikely to have changed the result of the trial, a reviewing court cannot say that giving the instruction was harmless error).

Reversed and remanded for new trial.