Argued and submitted October 30, 2018, affirmed April 15, 2020

PETR VASILYEVICH RUDNITSKYY,
*Petitioner-Appellant,*
*v.*
STATE OF OREGON,
*Defendant-Respondent.*

Clackamas County Circuit Court
16CV15467; A165073

464 P3d 471

Petitioner was convicted of unlawful possession of heroin following a jury trial and now appeals a judgment denying him post-conviction relief. Petitioner argues that he received constitutionally inadequate and ineffective assistance of counsel during his trial. Specifically, petitioner argues that trial counsel's performance was deficient when counsel first volunteered, and then allowed the prosecution to introduce into evidence and argue, the fact that petitioner had admitted to the arresting officer that he had previously used heroin. Petitioner also argues that trial counsel's errors were prejudicial to his case. The state contends that trial counsel's actions were reasonable and that, alternatively, the alleged errors did not prejudice petitioner. *Held*: The post-conviction court did not err. Petitioner did not meet his burden of establishing that trial counsel failed to exercise reasonable professional skill and judgment. Considering the circumstances at the time of the alleged errors, trial counsel's performance fell within the range of reasonably available alternatives.

Affirmed.

Kathie F. Steele, Judge.

Brian P. Conry argued the cause and filed the briefs for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Brewer, Senior Judge.

DeHOOG, P. J.

Affirmed.

**DeHOOG, P. J.**

Petitioner appeals a judgment denying him post-conviction relief based upon the performance of his criminal defense attorney. In the underlying prosecution, a jury found petitioner guilty of unlawful possession of heroin, ORS 475.854,[1] after hearing, in addition to other evidence, an officer testify that petitioner had acknowledged smoking heroin two months before the charged incident. On appeal of the post-conviction court's ruling, petitioner argues that he received constitutionally inadequate and ineffective assistance of counsel when his attorney (1) volunteered during his opening statement that petitioner had made that admission; (2) failed to object under OEC 403 when the officer testified to the admission; and (3) failed to take corrective action when the prosecution relied on petitioner's admission to support a propensity-based closing argument. Petitioner further argues that counsel's acts and omissions, both independently and cumulatively, caused him prejudice, and that the post-conviction court employed the wrong prejudice standard when ruling otherwise. The state responds that trial counsel's performance was not constitutionally defective, because (1) counsel reasonably chose to acknowledge petitioner's admission before the state brought it up; (2) an OEC 403 objection to that evidence would have been unsuccessful; and (3) the state did not argue a propensity theory in closing. The state alternatively argues that, even if trial counsel performed deficiently, that performance did not prejudice petitioner. For the reasons that follow, we conclude that petitioner has not established that the post-conviction court erred in denying him relief. Accordingly, we affirm.

"We review the grant or denial of post-conviction relief for legal error." *Waldorf v. Premo*, 301 Or App 572, 573, 457 P3d 298 (2019). In doing so, "[w]e accept the post-conviction court's express and implicit findings of fact if there is evidence in the record to support them." *Id*. We will not, however, find that a post-conviction court made any implicit findings that are inconsistent with, or unnecessary to, the court's ultimate conclusion. *Pereida-Alba v. Coursey*,

---

[1] ORS 475.854 has been amended since defendant committed his crime; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

356 Or 654, 670-71, 342 P3d 70 (2015). We state the facts accordingly.

Petitioner's underlying charge arose from an incident in which a witness had reported seeing a suspected drug deal in a restaurant parking lot. The responding officer, Schoenfeld, arrived within a minute of being dispatched. Schoenfeld found the car that the caller had identified parked in the corner of the lot. A man was leaning on the open driver-side window, and two men, petitioner and a passenger, were seated in the driver's and front passenger's seats. Both petitioner and his passenger were holding straws and cigarette lighters. Schoenfeld subsequently found both a large roll and small pieces of aluminum foil in petitioner's car. According to Schoenfeld, those items were likely used to smoke heroin through a method called "chasing the dragon." There was no indication, however, that petitioner was under the influence of heroin.

After advising petitioner of his *Miranda* rights, Schoenfeld told him that a witness had seen him engaging in a drug deal and asked petitioner for his side of the story. Petitioner responded that, although the drug purchase had been made through the driver-side window, the purchase had been for his friend, who had been seated in the passenger seat. Petitioner explained that he had given another person 20 dollars for the heroin, which he immediately handed to his friend, who was sick from heroin withdrawal. In Schoenfeld's view, petitioner's friend was uncooperative and "odd," but he was not exhibiting behavior consistent with heroin withdrawal. Schoenfeld then asked petitioner when *he* had last smoked heroin, and petitioner told him that "he had not used heroin in over two months, as he had taken a trip to the Ukraine recently."

Following the arrest of petitioner and his passenger, the responding officers later found an amount of heroin in petitioner's car that was small, even for personal-use purposes, and petitioner's passenger subsequently left evidence in a patrol car that indicated that he had smoked at least some of the heroin that had been purchased. Nonetheless, a grand jury ultimately indicted petitioner for unlawful possession of heroin, ORS 475.854.

At petitioner's ensuing trial, his attorney stated in opening that "[petitioner] *** is going to tell you that he hadn't done heroin in a number of months. He wasn't using heroin and he was staying off of it." Counsel explained that, even though petitioner had been able to stay clean, his friend had not been. Consistent with petitioner's statement to Schoenfeld, counsel acknowledged that petitioner had purchased the heroin, but said that he had done so with his friend's money and had handed the heroin to him so that he would not be sick. Counsel told the jury that, as a result, petitioner could not be found guilty of unlawfully possessing heroin, because he had never exercised actual control over the heroin, nor had he had the right to dominion or control over it.[2]

Despite having candidly acknowledged petitioner's historical drug use during opening statements, defense counsel later objected when Schoenfeld testified about petitioner's admission to him.

"[Prosecutor:]   This is very important so I want to go through this. [Petitioner] told you he took the heroin from the drug dealer, held it in his hand, and then passed it on to [his passenger]?

"[Schoenfeld:]   Yes.

"[Prosecutor:]   Go ahead.

"[Schoenfeld:]   I asked him when he had last used heroin, and he told me that he had not used heroin—

"[Trial Counsel:]   Objection. Relevance.

"THE COURT:   Overruled. Go ahead.

"[Schoenfeld:]   I asked [petitioner] when he had last used heroin, and he told me that he had not used heroin in over two months, as he had taken a trip to the Ukraine recently."

---

[2] At trial, the jury was provided with the following definition of "possess" for purposes of determining whether petitioner was guilty of possessing heroin:

"The term 'possess' means to have physical custody or otherwise to exercise dominion or control over property. The term 'possess' includes two types of possession, actual and constructive. A person has actual possession of property when the person has physical dominion or control over the property. A person has constructive possession of property when the person does not have physical custody of property but nevertheless either exercises control over it or has the right to exercise control over it."

Ultimately, petitioner did not testify, and defense counsel did not otherwise address petitioner's admissions or present any other evidence. However, petitioner's admission of past heroin use came up a third time during the prosecution's closing argument.

"And I will leave you with one last analogy. That is, [say] today [we were] talking about alcohol instead of heroin. And you can use your reason and common sense to make inferences, so let's talk about those. Based on your common life experience you can kind of put two and two together[.] *** Let's say there is someone who used to drink alcohol. Goes back to Russia, says he went back to Russia and doesn't drink anymore. In fact, [his choice of drink is a] martini. *** He says he gives it up. It was so bad he had to go to Europe to do it.

"What did he say? He said, I haven't used heroin for two months. *** Let's think about that with our alcohol example. The defendant takes him to a liquor store, goes and buys the vodka and hands it over to him, they pull to a spot and are about to drink it, and he's holding the martini shaker and a martini glass in his hand, and you walk up, and you see him shove it under his legs. The response to that is, that is ridiculous. You're about to have a drink there. The two of you bought that to drink together."

The jury unanimously voted to convict petitioner. Following an unsuccessful appeal on other grounds, *State v. Rudnitskyy*, 266 Or App 560, 338 P3d 742 (2014), *rev den*, 357 Or 112 (2015), petitioner sought post-conviction relief, alleging inadequate and ineffective assistance of trial counsel. In a letter opinion, the post-conviction court denied petitioner relief, concluding that "[p]etitioner's trial attorney initiated the evidence at trial of [p]etitioner's 'prior bad acts' [*i.e.*, petitioner's admitted use of heroin months before the charged incident] but, even if improper, there was sufficient evidence in the record for the jury to find [p]etitioner guilty without such evidence."[3] Petitioner now appeals the post-conviction court's resulting judgment.

---

[3] The majority of the post-conviction court's opinion letter addressed matters that are not at issue on appeal.

On appeal, petitioner argues that (1) post-conviction relief is warranted because trial counsel's performance was constitutionally deficient under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution; and (2) the post-conviction court applied the wrong legal standard in assessing whether counsel's allegedly deficient performance had prejudiced petitioner. Petitioner argues that counsel's prejudicial acknowledgment of his prior drug use during opening statement cannot be viewed as a reasonable tactical decision warranting deference, because it offered no benefit to petitioner, because the admissibility of that evidence was not inevitable, and because, in any event, counsel later failed to further any such strategic objective at trial. Petitioner further argues that, even if such a decision *could* have been a tactical choice, the state's assertion that it was a tactical choice here nonetheless fails because there is no evidence to support the contention that trial counsel's decision to acknowledge petitioner's prior drug use was a tactical one.

Separately, but relatedly, petitioner identifies two other instances in which trial counsel allegedly failed to act with the requisite degree of professional skill and judgment. First, he argues that trial counsel's performance was deficient when he objected to Schoenfeld's testimony on relevance grounds but failed to contend that the evidence was unduly prejudicial under OEC 403. In petitioner's view, his admission of prior use had no probative value except as propensity evidence, because the prosecution was not required to prove that he knew the controlled substance he had purchased for his friend was heroin. Second, petitioner argues that counsel should have objected during closing argument, because the prosecution's use of that prejudicial propensity evidence in closing improperly suggested that petitioner "should be convicted because of his prior heroin use."

Finally, in the event that we agree with petitioner that his trial attorney's performance was deficient in one or more of those ways, he argues that the post-conviction court inappropriately relied on a sufficiency-of-the-evidence standard in concluding that, to the extent that counsel fell

short of constitutional expectations, that deficiency did not prejudice petitioner. Properly evaluated, petitioner argues, counsel's performance entitles him to post-conviction relief because, had counsel not performed deficiently, it is "reasonably probable that the outcome of the case might have been different."

The state responds that trial counsel's performance was not constitutionally deficient, and that, if it was, counsel's acts or omissions did not prejudice petitioner. As noted, the state argues that trial counsel made a reasonable tactical choice to acknowledge petitioner's admission of prior heroin use, because doing so could potentially benefit petitioner. The state further argues that, because petitioner's admission of prior use would have been allowed into evidence whether or not defense counsel objected on OEC 403 grounds, it was reasonable both to acknowledge the admission in opening statement and to forgo an OEC 403 objection later at trial. For much the same reason, the state reasons, neither counsel's opening statement nor his failure to object under OEC 403 can have prejudiced petitioner. As to the prosecutor's closing argument, the state contends that it was not propensity based; rather, it was a summary of the evidence and petitioner's defense theory that used an analogy to demonstrate the implausibility of that theory. Finally, the state contends that, even if counsel's performance was deficient, the post-conviction court properly concluded that petitioner failed to show prejudice; that is, when read in its entirety, the post-conviction court's opinion letter demonstrates that the court applied the correct prejudice standard.

We begin with a review of the applicable legal standards. "Post-conviction relief is warranted when there has been a 'substantial denial' of a petitioner's 'rights under the Constitution of the United States, or the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.'" *Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015) (quoting ORS 138.530(1)(a)). To obtain relief on a claim of inadequate assistance of counsel, petitioner must establish, by a preponderance of the evidence, that his trial counsel did not exercise the professional skill and judgment

required by Article I, section 11, and that he suffered prejudice as a result.[4] *Waldorf*, 301 Or App at 575-76.

In discussing the performance prong of that analysis, the Supreme Court has "made clear" that the "constitution gives no defendant the right to a perfect defense—seldom does a lawyer walk away from a trial without thinking of something that might have been done differently or that [counsel] would have preferred to have avoided." *Montez v. Czerniak*, 355 Or 1, 7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (internal quotation marks omitted). Thus, to show that counsel's performance was constitutionally inadequate, it is not enough to show that the lawyer could or even should have chosen a different course of action; petitioner must show that any reasonable attorney would have taken the steps that petitioner now asserts his attorney should have taken. *Waldorf*, 301 Or App at 580; *see also Sullivan v. Popoff*, 274 Or App 222, 232, 360 P3d 625 (2015), *rev den*, 358 Or 833 (2016) (framing the performance prong as asking whether "in the circumstances that confronted petitioner's trial counsel, no reasonable trial lawyer could make the decision that petitioner's trial counsel, in fact, made"). And, in determining whether petitioner has made that showing, we evaluate the "reasonableness of counsel's performance * * * from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Docken v. Myrick*, 287 Or App 260, 271, 402 P3d 755 (2017) (internal quotation marks and brackets omitted).

If petitioner has met his burden of establishing that counsel failed to exercise reasonable professional skill and judgment in some aspect of his defense, we then must consider whether that deficient performance was prejudicial. To satisfy the prejudice prong of the analysis, petitioner "must establish that his trial attorney's acts or omissions tended to affect the outcome of his case." *Waldorf*, 301 Or App at 576.

---

[4] Petitioner separately requests relief under the Oregon and federal constitutions. However, those "standards for determining whether counsel's performance was deficient are 'functionally equivalent.'" *Waldorf*, 301 Or App at 576 n 3 (quoting *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014)). Moreover, petitioner does not assert that, even if his trial counsel's performance was adequate under the Oregon Constitution it nonetheless fell short under the federal standard. Accordingly, we address only petitioner's claims under the Oregon Constitution.

We turn to petitioner's contentions with those standards in mind.

We first address whether trial counsel's performance fell below the constitutional standard in any of the three instances alleged by petitioner: (1) failing to make a reasonable tactical decision when volunteering information about petitioner's admission of prior heroin use, (2) failing to object under OEC 403 when Schoenfeld testified to that admission, and (3) failing to object, move to strike, or request a mistrial during the prosecution's closing argument.

We begin with trial counsel's decision to acknowledge petitioner's admission of prior heroin use in opening statement and whether, at the time the decision was made, it reflected an absence of professional skill and judgment. In making that assessment, we are cognizant that the constitutional standard "allows for tactical choices that backfire, because, by their nature, trials often involve risk." *Johnson v. Premo*, 361 Or 688, 702, 399 P3d 431 (2017) (internal quotation marks omitted). It is not sufficient, however, simply to label any decision that proves unwise a "tactical" decision; for a tactical decision "to be considered an exercise of professional skill and judgment, [it] must be grounded on a reasonable investigation and should include an evaluation of the likely costs and potential benefits of the contemplated action." *Farmer v. Premo*, 363 Or 679, 690, 427 P3d 170 (2018) (internal quotation marks and citation omitted). Notably, even where, as here, the defendant in a post-conviction proceeding asserts that counsel's course of action was the product of a reasonable tactical decision, the burden of establishing that counsel failed to act with the requisite professional skill and judgment remains with the petitioner. *Alne v. Nooth*, 288 Or App 307, 318, 406 P3d 109 (2017) (following *Pereida-Alba*, 356 Or at 662). More specifically, petitioner has the burden of both production and proof to "establish that his or her counsel did not make all significant decisions in the exercise of reasonable professional judgment." *Pereida-Alba*, 356 Or at 672 n 14 (internal quotation marks omitted).

Here, emphasizing that reasonable tactical choices "must be grounded on a reasonable investigation," *Johnson*,

361 Or at 703 (internal quotation marks omitted), petitioner argues that trial counsel's decision cannot have followed such an investigation, because, if it had, counsel (1) would have recognized that the evidence of petitioner's admission would not be admissible and would provide "absolutely no benefit" to petitioner; or (2) would have taken steps to further the strategy initiated in opening statement later in the trial. We conclude otherwise.

First, we disagree with petitioner's contention that trial counsel's decision had no potential to benefit petitioner. Under the circumstances, counsel would likely have recognized that, even in the absence of petitioner's admission of prior use, the evidence of petitioner's guilt was strong. This was a simple case of possession. Petitioner admitted to Schoenfeld that *he* had paid 20 dollars to a third party for the heroin with full knowledge of what he was buying, that *he* had taken the heroin in hand for at least some amount of time, and that *he* had then handed it over to his friend, who was seated in the passenger seat of *his* car.[5] Notwithstanding his defense theory, which was that petitioner's conduct did not constitute dominion or control and therefore did not constitute unlawful possession, counsel would have known that his theory was, at least, quite vulnerable. *See State v. Fries*, 344 Or 541, 546, 185 P3d 453 (2008) ("As a general rule, 'to have physical possession' of property means to have bodily or physical control of it."); *id.* at 548 ("The fact that a person holds property at another's direction does not necessarily mean that he or she does not actually possess it.").

In light of those circumstances, an attorney exercising professional skill and judgment could reasonably have concluded that the best strategy was to be candid from the start about the evidence that the jury would likely hear, as well as about petitioner's obvious familiarity with drug

---

[5] The prosecution highlighted this evidence both in opening statement and closing argument. During opening, the prosecutor explained that, when petitioner was handed the heroin, he had actual possession of it, and, as he prepared to smoke the heroin after handing it to his friend, he remained at least in constructive possession of it. Further, in closing, the prosecution emphasized that there is no "minimum time requirement" for possession and that petitioner had admitted to possession when he discussed buying the heroin for his friend and taking it from the dealer.

culture and the phenomenon of "dope-sickness."[6] Defense counsel evidently hoped to persuade the jury that petitioner was not legally culpable for obtaining the heroin and getting it to his friend, even though he had admittedly handled illegal drugs in carrying out that objective. Thus, with relatively little resistance from the prosecution, counsel argued his theory that petitioner could not be found guilty of possession, because he "never exercised control over that heroin because it wasn't his." Under that theory, because petitioner had no interest in the heroin and was merely carrying out a transaction on behalf of his friend, the fact that he held the heroin could not establish possession.[7] Given that petitioner's defense depended upon the jury trusting his explanation, it was reasonable for counsel to try to appear as candid and forthcoming as possible about petitioner's lifestyle and the evidence that the jury would hear, which, as we discuss below, counsel could reasonably expect to include petitioner's admission of prior use. Under those circumstances, we reject petitioner's contention that counsel's tactical decision was of no potential benefit to him.

As the foregoing suggests, we likewise reject petitioner's argument that trial counsel's apparent belief that the evidence of petitioner's admission was likely to come in reflected an absence of professional skill and judgment.[8] The premise of petitioner's argument on appeal is that, because that evidence was relevant only for improper propensity purposes, it would not have been admissible over petitioner's objection *if* counsel had not brought it up himself during his opening statement. The state disputes that premise and

---

[6] We further note that, given the strong evidence of guilt available to the prosecution, reasonable counsel could have viewed there to be little additional risk in disclosing petitioner's admission of prior heroin use.

[7] Although the prosecution argued that there was no minimum time requirement to unlawful possession, it did not ask the court to prohibit defense counsel from arguing that petitioner's admittedly purposeful and knowing handling of the heroin was not a crime. Further, the prosecution did not charge petitioner with aiding or abetting a delivery of heroin, nor, for that reason, did it advance any argument to that effect.

[8] Although petitioner argues that the evidence of his admission of prior heroin use would not have been admissible if offered by the prosecution, he agreed at oral argument on appeal that, if it had been inevitable that the evidence would be admitted, it would have been reasonable for counsel to discuss the evidence in his opening statement.

argues that, contrary to petitioner's view, the evidence was relevant for a nonpropensity purpose under OEC 404(3)—petitioner's knowledge. *See* OEC 404(3) ("Evidence of other crimes, wrongs or acts *** may *** be admissible for other purposes, such as proof of *** knowledge[.]"). Specifically, because petitioner's admission of prior heroin use established that he was familiar with heroin, that evidence was relevant to prove that he knew the substance that he possessed was heroin. For the reasons that follow, we conclude that an attorney exercising professional skill and judgment could reasonably believe that the evidence of petitioner's admission would likely be admitted for that purpose and act in accordance with that belief.

Petitioner's argument that the evidence was not relevant for any nonpropensity purpose is based, in part, on our decision in *State v. Engen*, 164 Or App 591, 993 P2d 161 (1999), *rev den*, 330 Or 331 (2000). According to petitioner, *Engen* establishes that the evidence was not, as the state argues, relevant to prove his familiarity with heroin, because the prosecution was not required to prove that he knew that the controlled substance he was handling was heroin; it only had to prove that he knew it was a controlled substance. *See Engen*, 164 Or App at 607-09 (to establish offense of unlawful possession, the state had only to prove that the defendant knew that he possessed a controlled substance, not that he knew which specific substance he possessed). However, in *Engen*, the defendant had been prosecuted under *former* ORS 475.992 (1999), *renumbered as* ORS 475.752 (2011), which, at the time, generically prohibited the possession of controlled substances rather than the possession of a specific controlled substance. 164 Or App at 603-04 (discussing *former* ORS 475.992 (1999)); *see also State v. Harper*, 296 Or App 125, 131-32, 436 P3d 44 (2019) (contrasting statute at issue in *Engen* with ORS 475.894(1) (unlawful possession of methamphetamine), and concluding that the more specific statute required state to establish that the defendant knew the character of the controlled substance in his or her possession). Here, like the defendant in *Harper*, petitioner was prosecuted under a statute applicable to a specific controlled substance—heroin. *See* ORS 475.854 (defining offense of unlawful possession of heroin). Thus,

even though no decision to date has reached the same conclusion as *Harper* with regard to ORS 475.854, it stands to reason that the state may well have had to prove that petitioner knew that the controlled substance he had purchased was heroin to procure a conviction under that statute. *See Harper*, 296 Or App at 132.

Furthermore, although the *Harper* decision, which issued after petitioner's trial, cannot have been known to his attorney at that time, our reasoning in that case demonstrates why, notwithstanding the holding in *Engen*, a reasonable attorney could have concluded that the evidence of petitioner's admission of prior heroin use would likely be admitted, even if counsel objected.[9] Thus, as petitioner acknowledges on appeal, because trial counsel reasonably could have believed that the admission of petitioner's prior heroin use was likely, the decision to discuss the admission in his opening statement did not reflect an absence of professional skill and judgment.

Petitioner makes a final argument as to trial counsel's performance in his opening statement: Because counsel later objected to Schoenfeld's testimony regarding petitioner's admission, counsel's decision to discuss that evidence himself during opening cannot have been a reasonable tactical choice.[10] However, whatever counsel's rationale may

---

[9]  We emphasize that the evidence would not *necessarily* have been admitted if only offered by the prosecution. *See State v. Bowen*, 7 Or App 629, 633, 492 P2d 480 (1972) (holding that "[b]ecause the defendant's knowledge was not a genuinely controverted issue in the case," the prejudicial effect of evidence of prior marijuana possession charges outweighed "any legitimate probative value" in establishing that defendant knew the narcotic nature of the substance for the charge of unlawful sale of a narcotic drug (internal quotation marks omitted)). However, as discussed below with respect to petitioner's OEC 403 argument, the fact that the evidence may not ultimately have been admitted does not mean that it was unreasonable to believe that it likely would be.

[10]  We do not understand petitioner to argue that the later inconsistencies were evidence that trial "counsel inexplicably failed to make an argument necessary to support his tactical decision." *Ayer v. Coursey*, 253 Or App 726, 739, 292 P3d 595 (2012). In *Ayer*, we noted that the trial attorney had effectively allowed the state to "exclude evidence that was critical to his case" and "that the argument counsel did make did not allow even the possibility of introducing that evidence for the purpose for which it was essential to the defense." *Id.* The result of the attorney's deficient conduct in *Ayer* was that he could not support his theory that someone other than the defendant had abused the victim. *Id.* Here, however, trial counsel's later inconsistent decisions did not undercut his tactical decision in the same way. Instead, trial counsel was still able to refer to evidence that the

have been for later objecting—on relevance grounds—to testimony about evidence that he himself had told the jury that they would hear, we reject any implication that the later decision proves that counsel's earlier performance was constitutionally deficient. Petitioner has not shown that counsel anticipated at the time of his opening statement that he would later object to that testimony or that his objection necessarily indicated that he had not made a reasoned choice at that earlier time. As a result, petitioner has not met his burden of establishing that trial counsel's tactical decision was unreasonable when counsel made it.

We turn to petitioner's remaining arguments regarding trial counsel's performance. We begin with petitioner's assertion that trial counsel's failure to object to Schoenfeld's testimony on OEC 403[11] grounds—as opposed to merely on relevance grounds—reflected an absence of professional skill and judgment. For largely the same reasons that we rejected petitioner's related arguments regarding counsel's opening statement, we also reject his "failure to object on the correct basis" argument. As discussed, 303 Or App at 561 n 9, we recognize that it may not have been inevitable that the trial court would admit the evidence over an OEC 403 objection. Nonetheless, under the circumstances, reasonable counsel could have considered such an objection unlikely to succeed (or to provide grounds for appeal if it did not).

Several considerations support that conclusion. First, as noted, the prosecution had at least one nonpropensity basis for admitting the evidence that arguably went to a material fact of the case: whether petitioner's possession of heroin had been "knowing." Second, recognizing that the line between propensity evidence and evidence admitted for other nonpropensity purposes under OEC 404(3)—such as motive or intent—is not well defined, counsel may well have

---

heroin was for petitioner's friend (the only person that the record indicates had actually smoked the heroin), in support of his argument that petitioner's lack of right to control the heroin was comparable to holding a friend's drug prescription for a brief amount of time and did not amount to possession.

[11] OEC 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

anticipated that the trial court would view the evidence as more probative than prejudicial on one of those other bases, even if it could potentially be viewed as implicating his propensity to use drugs. Finally, given the context of petitioner's arrest, counsel may also have believed that, whether or not petitioner's admission came in, it would have been obvious to the jury that petitioner had some prior involvement with heroin, and that the trial court would have seen no benefit to hiding that fact by excluding petitioner's admission under OEC 403.

Therefore, despite any arguable potential for prejudice, a reasonable attorney could have concluded that making an OEC 403 objection was unlikely to succeed.[12] *See State v. Shaw*, 338 Or 586, 614, 113 P3d 898 (2005) ("[U]nder OEC 403, the critical inquiry is whether the evidence improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact." (Internal quotation marks omitted.)). As a result, petitioner has not established that trial counsel was constitutionally deficient for failing to make an OEC 403 objection.

Turning, finally, to the prosecution's closing argument, we conclude that petitioner has not established that counsel failed to exercise professional skill and judgment by not objecting, moving to strike, or requesting a mistrial during that argument. Petitioner argues that every reasonable attorney would have taken corrective action in response to the prosecutor's inappropriate and prejudicial propensity-based closing argument. Even assuming, without deciding, that the prosecutor's closing argument invoked character-based reasoning—and that any reasonable attorney would have recognized it as such—we conclude that counsel's failure to respond did not constitute inadequate assistance of counsel. Under the circumstances, a reasonable attorney could have viewed any objection as untimely or simply ineffective. The underlying evidence—petitioner's admission that he had previously used heroin—had been admitted

---

[12] That is not to suggest that, if an OEC 403 objection would have been meritorious, it would necessarily follow that all reasonable counsel would have raised that objection under the circumstances. *See Popoff*, 274 Or App at 232-33.

without limitation; arguably, at least, it could therefore have been considered by the jury for any purpose. *See Popoff*, 274 Or App at 236 (De Muniz, S. J., concurring) (acknowledging that the jury is not limited in how it may consider hearsay evidence that is presented without objection or limiting instruction); *State v. Stubbs*, 256 Or App 817, 827-28, 304 P3d 40 (2013) ("Regardless of whether the evidence * * * was actually relevant to the case, the jury was entitled to consider that evidence because it had been admitted without objection from either party."); *State v. DeBolt*, 176 Or App 159, 163, 30 P3d 1207 (2001) ("In the absence of an objection, the jury was not limited as to how it could consider the [testimonial] evidence."); *State v. Keller*, 315 Or 273, 283, 844 P2d 195 (1993) ("An objection [to the admission of evidence] is 'timely' [under OEC 103(1)(a)] if it is made as soon as its applicability to the offered evidence is known to the opponent of the evidence."). Further, petitioner does not assert that trial counsel's failure to request a limiting instruction under OEC 105[13] itself constituted inadequate assistance of counsel. Indeed, petitioner has expressly acknowledged that counsel's failure to request a limiting instruction is not at issue here. As a result, the post-conviction court did not err in rejecting petitioner's argument that counsel's failure to respond to the prosecution's closing argument entitled him to post-conviction relief.

In sum, we conclude that petitioner has not satisfied his burden of demonstrating that post-conviction relief is warranted, because he has not established that his trial counsel failed to exercise reasonable professional skill and judgment in any of the ways alleged. We recognize that, in retrospect, counsel's rationale for objecting to evidence he had previously discussed is not immediately apparent. Nonetheless, as we have explained, at the time of counsel's alleged missteps in representing petitioner, each decision "fell within the range of reasonable decisions available to a competent trial lawyer." *Popoff*, 274 Or App at 232. Further, having concluded that petitioner has not satisfied his burden

---

[13] OEC 105 provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

of proof as to any aspect of counsel's performance, we need not consider whether he was prejudiced by any such deficiency or whether the post-conviction court applied the correct standard in determining that he was not.

Affirmed.